IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ALLIED HOLDINGS, et. al.,**<br><br>    **Reorganized Debtors,** | |
| **VIRTUS CAPITAL, L.P., and HAWK OPPORTUNITY FUND, L.P.**<br><br>    **Appellants,**<br><br>v.<br><br>**ALLIED HOLDINGS, INC., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., AND YUCAIPA NATIONAL AUTOMOBILE TRANSPORTATION INDUSTRY NEGOTIATING COMMITTEE,**<br><br>    **Appellees.** | 1:07-cv-01455-WSD[1] |

---

[1] Portions of this case were previously filed under case number 1:07-cv-1553. That case was consolidated into the present matter and terminated as an independent case on July 23, 2007.

**OPINION AND ORDER**

This matter is before the Court on Appellees' Motion to Dismiss as Moot [8]. Also before the Court is Appellees' Motion for Leave to File Reply Brief [15]. Having considered the submission, Appellees' Motion for Leave to file Reply is granted.

This case involves the appeal of four orders entered in this matter by the bankruptcy court after protracted Chapter 11 bankruptcy proceedings ultimately concluding in a carefully negotiated plan of reorganization among the principal actors. Appellees have moved to dismiss all four orders as equitably moot. In response, Appellants, who are groups of investors in the Debtors, address the motion to dismiss only as it relates to the their appeal of the bankruptcy court's approval of the reorganization plan. In their opposition, Appellants only contest two provisions of the reorganization plan. Appellants ultimately ask this Court to modify the plan of reorganization in a manner more protective of their investment in the Debtors.

**I.    BACKGROUND**

This matter is before the Court on several appeals of orders entered

in bankruptcy proceedings for Allied Holdings Group, Inc. ("Allied" or "Debtor") and its affiliates (collectively, "Debtors").  On July 31, 2005, Allied, which was a large transporter of new and used vehicles, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Allied characterizes its need for bankruptcy relief as "the result of a continuing pattern of decreasing revenues, primarily caused by a decrease in new vehicle production, increasing expenses and the consequent difficulty of servicing debt and maintaining adequate liquidity." (Appellees' Br. at 2.)  During the bankruptcy proceedings, the bankruptcy court entered orders: 1) approving a settlement agreement between Allied and the majority of its shareholders (the "settlement agreement"; 2) approving a plan of reorganization; 3) approving an asset purchase and financing proposal designed to assist Allied in its exit from bankruptcy as a viable entity (the "Rig Financing"); and 4) denying Appellant's motion to continue the hearing date for considering the plan of reorganization.

Appellants, who are investors in Allied who did not agree to the settlement agreement or the reorganization plan, challenge each of these orders on appeal. The current motion before the Court argues that Appellants' appeals are equitably moot.  Appellants do not contest the mootness of their appeals of the orders

approving the settlement agreement and Rig Financing, or denying the continuance. Appellants only contest the mootness of their appeal of the May 18, 2007 order approving the Second Amended Joint Reorganization Plan (the "Plan"). This Order, accordingly, focuses its analysis on the mootness of that appeal.

On April 6, 2007, Debtors, Yucaipa, and the Teamsters National Automobile Transportation Industry Negotiating Committee ("TNATINC") filed the Plan for approval from the bankruptcy court. The Plan was the result of extended negotiations and represented a compromise balancing the interests of Debtors, their shareholders, Yucaipa and the International Brotherhood of Teamsters (as represented by TNATINC). The bankruptcy court held a lengthy hearing on the Plan from May 9 to May 11, 2007. Following the hearing, on May 18, the bankruptcy court entered an order confirming the Plan (the "Confirmation Order"). The Plan requires, among other provisions, cancellation of Allied's stock and a release of claims against a variety of third parties, including Appellees Yucaipa, the International Brotherhood of Teamsters, and TNATINC, on behalf of Allied shareholders who have agreed to the Plan (excluding Appellants).

On May 21, 2007, Appellants filed a notice of appeal of the Confirmation Order. The Plan, pursuant to the Confirmation Order, became effective on May 29,

2007.  About a month later, on June 25, 2007, Appellants filed a motion seeking a stay of the Confirmation Order while their appeal was pending.  On July 20, 2007, the bankruptcy court denied the motion, finding that Appellants had not demonstrated a likelihood of success on their appeal.  Appellants did not seek a stay in this Court.

Substantial portions of the Plan have been implemented and concluded since the entry of the Confirmation Order.[2]  For example, Allied Holdings, Inc. merged into Allied Systems Holdings, Inc.  As a result of the merger, Allied Holdings' outstanding common stock was cancelled, and the claims of Allied Holdings' unsecured creditors were converted into the right to receive shares of Allied Systems Holdings stock.  Allied and the International Brotherhood of Teamsters have also implemented a collective bargaining agreement approved by the Plan.  In this agreement, the International Brotherhood of Teamsters agreed to accept a 15% wage cut on behalf of its members. New Allied Holdings common stock has been distributed to holders of approximately $155,560,000 of Allied's unsecured debt, and this issuance of shares is deemed by the Plan to resolve Debtors' general unsecured debt claims.  Cash in the amount of $258,000 has been paid to identified

---

[2] Some portions of the Plan's implementation, such as the release of claims, had proceeded and were in place by the time Appellants moved for a stay.

holders of unsecured claims entitled under the Plan to receive a cash option.  The Reorganized Debtors have assumed 223 executory contracts, paying over $1,000,000 in cure costs, and rejected over 1,500 executory contracts pursuant to the Plan.  The Reorganized Debtors have also, pursuant to the Plan, paid claims to Yucaipa and paid secured tax claims in the amount of $400,000.[3]

## II.  DISCUSSION

The motion to dismiss relies primarily on the doctrine of equitable mootness.  Equitable mootness "is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of the judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable."  Mac Panel Co. v. Virginia Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002).  "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief.  Put another way, the court must determine whether the reorganization plan has been so substantially consummated that effective relief is no longer available."  In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992) (citations and quotations omitted).

---

[3] Several significant changes to the Debtors' management and organization have also been enacted in accordance with the terms of the Plan.

Although substantial consumption is an important consideration, it is not determinative. "[S]ubstantial consummation by itself does not resolve the issue. Even if substantial consummation has occurred, a court must still consider all of the circumstances of the case to determine whether it can grant effective relief." Id.

The Eleventh Circuit has set forth several factors to guide the Court's determination. First among these is whether a stay of the pending appeal has been obtained, and if not, why not. Id. at n.11. The absence of a stay "militates in favor of dismissal for mootness." In re GWI PCS 1, Inc., 230 F.3d 788, 801 (5th Cir. 2000). The absence of a stay increases the chances that substantial consummation will have occurred and the likelihood that parties will take actions in reliance on the reorganization plan that make appellate relief impractical. See Miami Center Ltd. Partnership v. Bank of New York, 838 F.2d 1547, 1555 (11th Cir. 1988). Additional factors include what type of transactions have been consummated, the relief appellant seeks, the effect that granting relief would have on the interests of third parties, and the affect granting the relief would have on the re-emergence of the debtor as a revitalized entity. Club Assocs., 956 F.2d at 1069 n.11.

The Court notes as a general matter that the Plan represents a complex tapestry of compromises among the various interests in this bankruptcy matter. Allied, its shareholders, creditors, and labor concerns have all materially contributed, after substantial negotiation, to the compromises representing the current plan for reorganization. The principal aspects of the Plan have already been consummated. Appellants seek substantial relief that would undermine the transactions that have already occurred, the reasonable reliance of third parties, and the foundational assumptions of the Plan.

A.   Appellant's Requests for Relief

Appellants expressly seek relief from only two provisions of the Plan. First, the Plan provides:

> the common stock of Allied would be cancelled as of the Effective date of the Plan, and that stockholders of Allied [including appellees] would not receive any distribution or payment in connection with their respective equity interests in Allied, based on the implicit . . . assumption that Allied lacked sufficient value to enable it to satisfy the full administrative claims and its obligations to creditors, and thereby permit it to make a distribution to its stockholders.

(Appellants' Br. at 3.)

Appellants argue that such a distribution can be made to them in the form of stock from the reorganized Allied or cash without working substantial inequity on the

parties or unraveling the Plan. Appellants argue that the "implicit assumption" that Allied lacked sufficient value to make a distribution to shareholders is false. The second provision to which Appellants object is a release of claims to which they are not bound, which prohibits "each entity (other than a debtor) that has held, holds, or may hold a claim or interest" from suing, "to the fullest extent permitted under applicable law, as such law may be extended or interpreted subsequent to the effective date":

> The current directors, officers, and employees of the debtors . . . and the debtors' former or current attorneys, financial advisors, investment bankers, accountants, and other such professionals retained by such person . . . and Yucaipa and TNATINC and each of their respective affiliates and their respective officers, directors, employees, partners, members, managers, and advisors.

(Appellants' Br. at 4) (Plan § 11.6). An "interest" is defined as "any equity security of any Debtor." (Plan, § 1.1).

Appellants appeal this provision because they contend that legal action needs to be asserted against Yucaipa and TNATINC, alleging, among other claims, that those parties engaged in collusion and racketeering that contributed to Allied's bankruptcy. Appellants argue that the Court should rule that the Plan's third-party releases are not permissible "under applicable law"–in other words, that the Court

should construe the release portion of the Plan ineffective as a matter of law by its own terms.

Appellants admit that the bankruptcy court released them from being bound by this release of claims as a condition of the Plan. Appellants essentially argue that the Court ought to invalidate the release because it prohibits other injured shareholders from joining Appellants in an anticipated class action lawsuit in which Appellants may contemplate being the class representatives.

B.   The Confirmation Appeal

The Court cannot grant the relief Appellants request in this appeal without impacting significantly and materially the interests of multiple parties, including Yucaipa, TNATINC, the settling shareholders, and Allied. Several hundred contracts, including an employment agreement in which the International Brotherhood of Teamsters agreed to accept a 15% pay cut, have been entered into in reliance on the Plan. Securities and substantial cash outlays have been issued in accordance with the Plan. Appellants did not seek a stay of the Confirmation Order until nearly a month after they filed their appeal and only after substantial portions of the Plan had been implemented. When Appellants finally sought a stay, the bankruptcy judge, who spent considerable time evaluating the practical

viability and legal propriety of the Plan, concluded that Appellants' challenge was not likely to succeed. The present reality is that a complex web of agreements and payments have been virtually completed by now in reliance on the Plan and Confirmation Order.

Appellants argue further that all the parties who would be affected if the Court grants the relief they seek were involved in the bankruptcy proceeding, thus they could not "claim to have been unfairly surprised or unduly prejudiced by the grant of relief, since they were parties in interest in the case . . . ." (Appellants' Br. at 18.) Appellants contend essentially that the notice these parties had of these appeals materially affects the equities of the mootness determination.

Appellants misapprehend the purpose of equitable mootness. The parties in this proceeding and third parties have relied on the Confirmation Order to implement the Plan. Promises, cash, and securities have changed hands in a manner that simply cannot be undone and certainly cannot be undone fairly. Despite the fact that many of the potentially affected parties were aware of the appeals, their conduct in reliance on the Confirmation Order was reasonable, appropriate, and justified because the Confirmation Order was not subject to a stay. Although many of the parties had notice of the appeals, Appellants did not seek a

stay for nearly a month. When Appellants finally sought a stay, the bankruptcy court held that the Plan should go forward and that the appeals were unlikely to succeed on the merits. Appellants did not seek a stay from this Court. The Plan did go forward, and at this point the Court cannot grant relief without materially impacting the transactions that have already occurred and the Plan's future viability. The fact that many of the concerned parties knew that appeals were pending does not change this conclusion.[4]

### 1. Appellants' Request for a Stock or Cash Distribution

Appellants first claim for relief is that the reorganized Allied issue cash or stock to compensate Appellants for their 8.3% ownership interest in Allied. This request for relief, if granted, would unravel or make ineffective several consummated aspects of the Plan.[5] Reorganized Allied has already issued securities according to the provisions of the Plan. The compromise represented by

---

[4] If mere notice were sufficient to defeat equitable mootness, the doctrine would itself be moot in many of the circumstances it was intended to address.

[5] Even if Appellants' claims are valid, and the bankruptcy court erred in determining that Allied did not have sufficient value to make a payment to stockholders, the Court's only concern at the present stage is whether granting the requested relief would work a fundamental inequity by unraveling the Plan and thwarting the reasonable expectations of third parties. Although Appellants' may be correct about Allied's value, the proceedings have progressed too far to correct this error without working an even greater inequity.

the Plan was entered into based on a reasonable expectation regarding the value of those securities. If Appellants' request is granted in the form of a stock disbursement, the stock of the reorganized Allied would be substantially diluted, and the reasonable expectations of the stockholders and creditors who agreed to the Plan undermined. If Appellants' request is granted in the form of a cash disbursement, reorganized Allied would be forced to assume significant additional debt while trying to come out of bankruptcy, which could affect the viability of its exit financing and hinder its successful emergence from bankruptcy. The Court does not believe the Plan would have been agreed to and approved if 8.3% of Allied's value was required to be transferred to Appellants.

      2.      <u>Appellants' Request to Invalidate the Release of Claims</u>

Appellants' request concerning the release of claims is also moot. The record shows that the release of claims was an integral part of the plan. The assurance against suit provided by the release was a cornerstone for significant aspects of the reorganization, including the Rig Financing agreement with Yucaipa and the renegotiated labor contract with the International Brotherhood of Teamsters. Without the release, the continuing validity of these important aspects

of the Plan is endangered and these parties' reliance on the Confirmation Order is thwarted.

Appellants' request regarding the release of claims suffers problems beyond mootness. Appellants acknowledge that the release does not apply to them (Appellants Br. at 8.) The bankruptcy court confirmed the Plan only with the express finding that non-consenting shareholders like Appellants are not parties to and would not be bound by the release of claims. Appellants' standing to pursue this form of relief is thus doubtful.[6] See Bochese v. Town of Ponce Inlet, 405 F.3d 964 (11th Cir. 2005) (holding that only those with a legally enforceable right in a contract have standing to sue on it).

Even if Appellants had standing to challenge the release portion of the Plan, and even if Appellants' objections were not moot, the Court doubts its ability to grant the relief Appellants' seek. Appellants' appear to ask the Court to construe the language of the Plan as a matter of law in a manner that would permit potential

---

[6] Appellants' argue that they are "aggrieved" by the release because the release materially prevents them from pursuing class action claims against Yucaipa and others. Appellants do not argue that they are prevented from bringing suit on their own behalf. They also do not argue that they have a legally enforceable interest in the release provision. Appellants present no authority for the proposition that a party can be aggrieved by an order barring other members of a potential class–but not the party seeking relief–from filing suit.

members of the class of Allied shareholders to join in a class-action lawsuit.  There is, however, no such action pending in any court, and, if there were, its viability would be doubtful at best.[7]  There is no live controversy concerning whether shareholders other than Appellants are entitled to assert claims against the parties Appellants seek to sue in a class-action lawsuit.[8]

      C.     <u>The Settlement, Rig Financing, and Continuance Appeals</u>

Appellants' claims focus solely on the Plan and the Confirmation Order.  Appellants do not contest Appellees' argument that their appeals of the Settlement Order, Rig Financing Order, and Continuance Order are moot.

A party's failure to respond to a dispositive argument regarding a claim constitutes an abandonment of that claim.  <u>Bute v. Schuller Int'l, Inc.</u>, 998 F. Supp 1473, 1477 (N.D. Ga. 1998).  Because Appellants have failed to respond or otherwise oppose Appellees' motion concerning the mootness of the Settlement, Rig Financing, or Continuance Orders, the Court considers these claims

---

[7] Appellants have voluntarily dismissed a class-action lawsuit filed in this matter.

[8] If this Court were to construe the validity of the release provision, it would be issuing an advisory opinion in violation of Article III of the United States Constitution.  <u>See</u> <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1335 (11th Cir. 2001) ("Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.") (quotation and citation omitted).

abandoned. Further, the Court finds that each of these orders has been substantially consummated and that third parties have acted in substantial reliance on them. The Court dismisses these appeals as moot.

### III.  CONCLUSION

Accordingly

**IT IS HEREBY ORDERED** that Appellees' Motion to Dismiss as Moot [8] is **GRANTED**.

**IT IS FURTHER ORDERED** that Appellees' Motion for Leave to File a Reply Brief [15] is **GRANTED**.

**SO ORDERED** this 19th day of September, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE